**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 11-cv-02869-REB

ROGER MANUEL MARTINEZ,

    Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

    Defendant.

**ORDER AFFIRMING COMMISSIONER**

**Blackburn, J.**

The matter before me is plaintiff's **Complaint** [#1],[1] filed November 4, 2011, seeking review of the Commissioner's decision denying plaintiff's claims for disability insurance benefits and supplemental security income benefits under Titles II and XVI of the Social Security Act, 42 U.S.C. § 401, *et seq.* I have jurisdiction to review the Commissioner's final decision under 42 U.S.C. § 405(g). The matter has been fully briefed, obviating the need for oral argument. I affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff alleges that he is disabled as a result of neuropathic pain of his right hand, status post-amputation of the fourth and fifth fingers, and associated depression. After his applications for disability insurance benefits and supplemental security income benefits were denied, plaintiff requested a hearing before an administrative law judge.

---

[1] "[#1]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

This hearing was held on May 19, 2010.  At the time of the hearing, plaintiff was 44 years old.  He has an 11th grade education and past relevant work experience as meat packer, mechanic, construction laborer, and lubrication technician.  He has not engaged in substantial gainful activity since December 15, 2006.

The ALJ found that plaintiff was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits.  Although the medical evidence established that plaintiff suffered from severe impairments, the judge concluded that the severity of those impairments did not meet or equal any impairment listed in the social security regulations.  The ALJ found that plaintiff had the residual functional capacity for simple, unskilled work involving no more than one- to three-step instructions and requiring that plaintiff lift no more than ten pounds occasionally, using the right hand only to assist.  Although these limitations precluded plaintiff's past relevant work, the ALJ concluded that there were other jobs existing in significant numbers in the national and local economies that were within his residual functional capacity.  She therefore found plaintiff not disabled at step five of the sequential evaluation.  Plaintiff appealed this decision to the Appeals Council.  The Council affirmed.  Plaintiff then filed this action in federal court.

## II.  STANDARD OF REVIEW

A person is disabled within the meaning of the Social Security Act only if his physical and/or mental impairments preclude him from performing both his previous work and any other "substantial gainful work which exists in the national economy."  42 U.S.C. § 423(d)(2).  "When a claimant has one or more severe impairments the Social Security [Act] requires the [Commissioner] to consider the combined effects of the

impairments in making a disability determination." **Campbell v. Bowen**, 822 F.2d 1518, 1521 (10th Cir. 1987) (citing 42 U.S.C. § 423(d)(2)(C)).  However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act.  To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months.  **See Kelley v. Chater**, 62 F.3d 335, 338 (10th Cir. 1995).

The Commissioner has established a five-step sequential evaluation process for determining whether a claimant is disabled:

> 1. The ALJ must first ascertain whether the claimant is engaged in substantial gainful activity. A claimant who is working is not disabled regardless of the medical findings.
>
> 2. The ALJ must then determine whether the claimed impairment is "severe."  A "severe impairment" must significantly limit the claimant's physical or mental ability to do basic work activities.
>
> 3. The ALJ must then determine if the impairment meets or equals in severity certain impairments described in Appendix 1 of the regulations.
>
> 4. If the claimant's impairment does not meet or equal a listed impairment, the ALJ must determine whether the claimant can perform his past work despite any limitations.
>
> 5. If the claimant does not have the residual functional capacity to perform her past work, the ALJ must decide whether the claimant can perform any other gainful and substantial work in the economy.  This determination is made on the basis of the claimant's age, education, work experience, and residual functional capacity.

20 C.F.R. §§ 404.1520(b)-(f) & 416.920(b)-(f).  **See also Williams v. Bowen** 844 F.2d

748, 750-52 (10th Cir. 1988). The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S.Ct. 2287, 2294 n.5, 96 L.Ed.2d 119 (1987). The burden then shifts to the Commissioner to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 801 (10th Cir. 1991).

Review of the Commissioner's disability decision is limited to determining whether the ALJ applied the correct legal standard and whether the decision is supported by substantial evidence. *Hamilton v. Secretary of Health and Human Services*, 961 F.2d 1495, 1497-98 (10th Cir. 1992); *Brown v. Sullivan*, 912 F.2d 1194, 1196 (10th Cir. 1990). Substantial evidence is evidence a reasonable mind would accept as adequate to support a conclusion. *Brown*, 912 F.2d at 1196. It requires more than a scintilla but less than a preponderance of the evidence. *Hedstrom v. Sullivan*, 783 F.Supp. 553, 556 (D. Colo. 1992). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). Although a reviewing court should meticulously examine the record, it may not reweigh the evidence or substitute its discretion for that of the Commissioner. *Id.*

### III.  LEGAL ANALYSIS

Plaintiff alleges numerous errors in the ALJ's assessment of the various medical source opinions of record, her determination of plaintiff's residual functional capacity, and her conclusion that plaintiff's own testimony was less than fully credible.  Although I agree that the ALJ's opinion ideally would have included a more thorough analysis of the reasons for her determination, I find no error sufficient to warrant reversal and therefore affirm.

Plaintiff's fourth and fifth fingers of his right hand were amputated following a car accident when he was 18 years old.  Nevertheless, the loss of these digits apparently did not affect plaintiff's ability to work until more recently, when he began experiencing increasing pain and loss of grip strength and functionality of his right hand.  (*See* Tr. 261.)  The pain and associated loss of function became particularly acute after plaintiff struck the third finger of that hand against something in 2008.  (Tr. 272.)  Plaintiff testified at the hearing that he now has little strength in his right hand and that his middle finger "doesn't even bend anymore [*sic*] at all."  (Tr. 24-25.)

Plaintiff first argues that the ALJ erred in failing to articulate reasons for apparently rejecting the opinions of plaintiff's treating source, Dr. Richard King, and a consultative examiner, Dr. Robert Williams, that plaintiff could not lift any amount of weight with his right hand.  Plaintiff points out what appears to be a disconnect between the ALJ's purported assignment of "great weight" to these source opinions (*see* Tr. 16) and her conclusion that plaintiff's residual functional capacity included the ability to use his right hand as an assist when lifting (Tr. 14).

The opinion of a treating source is entitled to controlling weight when it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the case record" and cannot be rejected absent good cause for specific and legitimate reasons clearly articulated in the hearing decision.  20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2); **see also Watkins v. Barnhart**, 350 F.3d 1297, 1301 (10th Cir. 2003).  Good cause may be found when a treating source opinion is brief, conclusory, or unsupported by the medical evidence.  **Frey v. Bowen**, 816 F.2d 508, 513 (10th Cir. 1987).  Even if a treating source opinion is not given controlling weight, it is still entitled to deference "and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927."  **Social Security Ruling 96-2p**, 1996 WL 374188 at *4 (SSA July 2, 1996).  **See also Langley v. Barnhart**, 373 F.3d 1116, 1119 (10th Cir. 2004).[2]

The ALJ noted accurately that both Drs. King and Williams stated that plaintiff could not lift with his right hand.  Nevertheless, her residual functional capacity assessment provided that plaintiff could use his right hand "as an assist" to the left in lifting ten pounds or less.  Although this determination was not fully explained, it is adequately supported by the record.  Although Dr. King's lifting restriction was

---

[2] These factors include:

1. the physician's length of treatment of the claimant;
2. the physician's frequency of examination;
3. the nature and extent of the treatment relationship;
4. the support of the physician's opinion afforded by the medical evidence of record;
5. the consistency of the opinion with the record as a whole; and
6. the specialization of the treating physician.

20 C.F.R. §§ 404.1527(d)(2) & 416.927(d)(2).

unqualified, he also classified plaintiff's pain as "moderate," rather than "marked" or "extreme" (Tr. 266), a conclusion that does not square with a total restriction on use of the right hand. Moreover, Dr. King claimed that plaintiff's impairments had been at that level of severity for "over 20 years" (Tr. 267), a time period that encompassed much of his working life. This too renders his opinion more qualified than it might at first appear. *See* 20 C.F.R. § 404.1520(b).

For his part, Dr. Williams suggested that while he did "not recommend that [plaintiff] be using that right hand for anything at this point due to the amount of pain it causes him and the obvious lack of function of the hand on exam" (Tr. 305), plaintiff could use his right hand to lift ten pounds or less "for daily activities and hygiene" (Tr. 290). In a separate form setting forth plaintiff's functional abilities, Dr. Williams further noted that "[i]t is not safe for claimant to be lifting more than 10 [pounds] with his left hand because he cannot stabilize the weight with the use of his right hand due to pain and limited function of the right hand." (Tr. 292.) Plaintiff himself testified that he could carry "[f]ive pounds, maybe" with both hands, although he also stated that he couldn't carry a bowl of cereal with both hands. (Tr. 25.)

It is important to remember in this regard that an ALJ is under no obligation to base her residual functional capacity assessment on a particular medical source's opinion. *See Moses v. Astrue*, 2012 WL 1326672 at *4 (D. Colo April 17, 2012). *See also Gonzales v. Astrue*, 2012 WL 4356243 at *4 (D. Colo. Sept. 24, 2012) ("Just as the ALJ is not bound by any particular source opinion as to a claimant's residual functional capacity, neither is he obligated to include in his assessment every limitation

7

possibly suggested by a medical source."). Residual functional capacity is assessed "based on all of the relevant medical and other evidence," 20 C.F.R. § 404.1545(a)(3) & 416.945(a)(3), "including medical records, observations of treating physicians and others, and plaintiff's own description of his limitations," ***Noble v. Callahan***, 978 F.Supp. 980, 987 (D. Kan. 1997). Although the ALJ's determination must be grounded in some medical evidence, *see **Anderson v. Shalala***, 51 F.3d 777, 779 (8th Cir. 1995), it ultimately is an administrative determination reserved to the Commissioner, 20 C.F.R. §§ 404.1546 & 416.946; ***Rutledge v. Apfel***, 230 F.3d 1172, 1175 (10th Cir. 2000).

Of course, a treating source opinion may not be rejected absent good cause for specific, legitimate reasons clearly articulated in the hearing decision. ***Watkins***, 350 F.3d at 1301; ***Goatcher v. United States Department of Health & Human Services***, 52 F.3d 288, 290 (10th Cir. 1995); ***Frey v. Bowen***, 816 F.2d 508, 513 (10th Cir. 1987). Nevertheless, given the totality of evidence, I cannot find reversible error in the ALJ's failure to more precisely articulate her reasons for including a right-hand assist in her residual functional capacity. *See **Bernal v. Bowen***, 851 F.2d 297, 303 (10th Cir. 1988). The ALJ found plaintiff's testimony regarding his functional abilities and limitations not entirely credible, and as articulated more fully below, I find no error in that determination. The suggestion by Dr. Williams that plaintiff cannot stabilize more than ten pounds with the right hand itself permits a reasonable inference that plaintiff can use that hand to stabilize less than ten pounds. Coupled with the notation that plaintiff can use the right hand for daily activities and hygiene, this evidence supports the ALJ's residual functional capacity assessment allowing for the limited use of plaintiff's right

8

hand.[3]

Nor do I find any basis for reversal in the ALJ's failure to specify the weight given to consultative psychological examiner Brett Valette's opinion, as it is clear she gave that opinion at least some weight, incorporating into her residual functional capacity assessment his suggestion that plaintiff had mild to moderate limitations in his ability to make judgments on complex work-related decisions. (Tr. 16, 283.) Plaintiff suggests that the ALJ was required to go further and consider those additional functional mental limitations that were found to be "mild," specifically, his ability to interact appropriately with the public, supervisors, and co-workers and to respond appropriately to workplace situations and changes in the work setting. Dr. Valette did not specify what factors supported this particular conclusion. (Tr. 284).

I find no legal basis on which to impose such a requirement. "Mild" means that "[t]here is a slight limitation in this area, but the individual can generally function well." (Tr. 283.) With respect to unskilled work, the Commissioner has recognized that a "substantial" loss of the abilities to respond appropriately to supervision, coworkers, and usual work situations or to deal with changes in a routine work setting would severely limit the potential occupational base. **Social Security Rule** 81-15, 1985 WL 56857 at *4 (SSA 1985). I find no authority suggesting that the same could be said of an individual with only "mild" restrictions in these abilities, who otherwise "can generally

---

[3] Nor do I find any reversible error in the ALJ's failure to include Dr. Williams's total limitation on plaintiff's ability to work around moving mechanical parts. (Tr. 297.) This limitation is not supported by anything in Dr. Williams's report or otherwise supported or explained by the evidence of record. Moreover, as the Commissioner points out in his response, none of the three jobs identified by the ALJ as within plaintiff's residual functional capacity requires working around moving mechanical parts. (*See* Def. Resp. Br. at 12.)

function well."[4]

Relatedly, plaintiff claims that the ALJ inappropriately translated Dr. Valette's mild-to-moderate limitations on plaintiff's ability to understand and carry out complex instructions into a residual functional capacity for "simple, unskilled work." Plaintiff suggests that the characterization of work as "simple" is too nebulous a standard to be helpful. This argument would be more persuasive if the mental residual capacity form itself did not ask the medical source to assess the claimant's abilities to understand, remember, and carry out "simple" instructions and to make "simple" work-related decisions. (*See* Tr. 283.) Dr. Valette apparently had no issue understanding what the term meant in that context, nor did the vocational expert at the hearing. (*See* Tr. 49-51.) Moreover, the ALJ went on to clarify that by her definition, "simple unskilled work" involved no more than "one, two, or three step instructions." (Tr. 14.) I therefore find no error in this regard, either.

Plaintiff next faults the ALJ for discrediting his subjective complaints of pain and limitation. The Tenth Circuit has outlined a tripartite test for evaluating subjective complaints of pain:

> We must consider (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

---

[4] As plaintiff points out, the ALJ must consider all a claimant's impairments, both severe and non-severe, in determining residual functional capacity. *See* 20 C.F.R. § 404.1545(a)(2). Plaintiff provides no authority, however, to expand this duty to require the ALJ to include every limitation suggested by a medical source as characterizing an impairment that already has been found to be severe, as occurred in this case.

10

*Musgrave*, 966 F.2d at 1375-76 (citing *Luna v. Bowen*, 834 F.2d 161, 163-64 (10th Cir. 1987)). Nevertheless, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir. 2001) (citing *Kepler v. Chater*, 68 F.3d 387, 390-91 (10th Cir. 1995)). So long as the ALJ links her credibility assessment to specific evidence in the record, her determination is entitled to substantial deference. *Id.* at 910; *see also Qualls v. Apfel*, 206 F.3d 1368, 1372 (10th Cir. 2000).

Here, the ALJ followed the *Luna* framework and found that plaintiff did have an impairment that could cause pain. In evaluating whether that pain was as disabling as alleged, however, the ALJ noted numerous inconsistencies between plaintiff's testimony and the medical and other evidence of record. (Tr. 15.) Having reviewed the record, I find that each of these bases finds adequate support therein.[5] Moreover, although it was not proper to discredit plaintiff merely because of the dearth of objective medical evidence, *see* 20 C.F.R. § 404.1529(c)(2), the ALJ provided sufficient additional reasons that were relevant and legitimate to the credibility analysis (*see* Tr. 15), and she clearly did not discount either Dr. King's or Dr. Williams's medical opinions on this basis. In addition, the ALJ properly noted and relied on the fact that, despite his claims of disability related to depression, plaintiff never sought treatment for this condition. *See Huston v. Bowen*, 838 F.2d 1125, 1132 & n.7 (10th Cir. 1988); *Fessler v. Apfel*, 11 F.Supp.2d 1244, 1251-52 (D. Colo. 1998). In light of these facts, and given the

---

[5] I find unpersuasive plaintiff's attempt to educate me on the allegedly nuanced medical significance of what appear to be straightforward observations about the flexibility *vel non* of plaintiff's third finger.

deferential standard applicable to the credibility determination, I do not find that reversal is warranted on this basis.

Finally, plaintiff argues that the ALJ impermissibly discounted the opinion of Dr. Ben Martinez that plaintiff was disabled. (*See* Tr. 222-223.)  The ALJ gave this opinion no weight because it addressed no specific functional limitations and was based entirely on plaintiff's subjective complaints. (Tr. 16.)[6]  Although it would be improper to discredit a medical source opinion solely on the ground that it was based on a patient's subjective reports, *see Orender v. Barnhart*, 2002 WL 1747501 at *6 (D. Kan. July 16, 2002), there are no medical records or other objective evidence supporting Dr. Martinez's conclusions, *see Cowan v. Astrue*, 552 F.3d 1182, 1186 (10th Cir. 2008) (doctor's brief statement in work release form "was not a true medical opinion" because "[i]t did not contain [the doctor's] judgment about the nature and severity of [the plaintiff's] physical limitations, or any information about what activities [the plaintiff] could still perform").  Moreover, the finding that a claimant is disabled *vel non* is an issue reserved to the Commissioner, and although a source statement on that issue must be considered, it is entitled to no particular weight.  *See* 20 C.F.R. §§ 404.1527(e) & 41.6.927(e); *Sosa v. Barnhart*, 2003 WL 21436102 at *5 (D. Kan. April 10, 2003), *adopted*, 2003 WL 21428384 (D. Kan. Jun. 17, 2003).  I therefore find no error in the ALJ's determination in this regard.

---

[6] Moreover, it appears that although the ALJ characterized Dr. Martinez as a "treating source," he in fact saw plaintiff only twice to fill out disability forms.  There is no legal basis for binding the ALJ to this misstatement and thus requiring her to afford Dr. Martinez's opinions greater weight than they would otherwise enjoy under the regulations.

**THEREFORE IT IS ORDERED** that the conclusion of the Commissioner through the Administrative Law Judge that plaintiff was not disabled is **AFFIRMED**.

Dated March 26, 2013, at Denver, Colorado.

**BY THE COURT:**

*Bob Blackburn*
Robert E. Blackburn
United States District Judge